UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

LOLITA G. BURTON )
)
v. ) NO. 2:05-CV-100
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

## MEMORANDUM OPINION

The plaintiff Lolita G. Burton has filed a motion for summary judgment on her complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt denying her application for supplemental security income under the Social Security Act. The defendant has also filed a motion for summary judgment.

Ms. Burton was born in 1972 and was 30 years old at the time of her administrative hearing. [Tr. 368]. She completed eleventh grade and has no relevant past work experience. [Tr. 16, 369]. Ms. Burton alleges she is disabled as of September 6, 2002, from blood clots in her left arm and right leg. [Tr. 16]. Based upon a finding that her severe impairments were not severe enough, the Administrative Law Judge [ALJ] found that Ms. Burton was not disabled as defined by the Social Security Act. [Tr. 19].

At Ms. Burton's administrative hearing held on September 3, 2003, the testimony of Ms. Burton and vocational expert Robert Spangler was received into evidence. [Tr. 368-81]. She testified she was unable to work now because of blood clots in her legs and arms caused by a blood disorder. [Tr. 369-70]. She feels depressed and has crying spells. [Tr. 373]. She drives infrequently but is able to fix herself meals. [*Id.*]. Ms. Burton uses a four-legged cane to walk and bruises easily. [Tr. 376].

Vocational expert Dr. Robert Spangler testified next. [Tr. 379-81]. The ALJ asked him to assume a woman of Ms. Burton's age, education, and work background who was restricted to sedentary work which did not require her to perform complex or detailed work because of an emotional disorder with mild restrictions on her ability to perform work-related activities. [Tr. 379]. According to the vocational expert, such a person could work as an assembler, production inspector, grader, sorter, machine feeder, and material handler, *inter alia*. [Tr. 380]. The ALJ ruled that Ms. Burton was not disabled because her severe impairments of arterial occlusive disease, hypercoaguability, borderline intellectual functioning, and dysthymia were not severe enough to warrant a finding of disability. [Tr. 19]. The ALJ then found Ms. Burton retained the residual functional capacity [RFC] to perform simple and unskilled sedentary exertion with no more than mild emotional restrictions. [Tr. 20].

With those limitations, Ms. Burton could perform work that exists in significant numbers in the national economy. [Tr. 21].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Ms. Burton requests summary judgment and claims the ALJ's hypothetical question to the vocational expert did not accurately reflect her mental and physical impairments. The ALJ asked the vocational expert to consider someone who could perform sedentary work but needed accommodations for simple and unskilled work and work that would accommodate mild mental restrictions. These accommodations are in line with the medical evidence. For example, Dr. Wayne Page evaluated Ms. Burton in January 2003 and found she could frequently and occasionally lift/carry 10

3

pounds while standing and frequently and occasionally manipulate 25 pounds while seated. [Tr. 312]. In addition, she could stand/walk for two hours in an eight-hour workday and sit for eight hours in an eight-hour workday. [Tr. 313]. Dr. Lawrence Schull reviewed the medical evidence that same month and concluded Ms. Burton had non-severe physical impairments and could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, and sit/walk/stand for six hours in an eight-hour workday. [Tr. 315]. In November 2001, Alice Garland, M.S., evaluated Ms. Burton and concluded her ability to persist and concentrate was somewhat limited and her ability to get along with people, work with the public, and adapt was not significantly limited. [Tr. 282]. Finally, in December 2001, a state agency mental health consultant reviewed the evidence and stated that Ms. Burton had mild restrictions in her activities of daily living and ability to maintain social functioning and moderate difficulties in maintaining concentration, persistence, and pace. [Tr. 300]. Because the medical evidence coincided with the ALJ's RFC determination, the latter was made with substantial evidence.

Ms. Burton also contends the ALJ failed to adequately consider the effects her recurrent blood clots, limitations in her upper extremities, use of a cane, and need to rest during the day would have on her ability to work. The ALJ did consider the effects of Ms. Burton's recurrent blood clots. He concluded her impairment was

severe and limited her to simple, sedentary work. [Tr. 19, 20]. As for the remaining allegations, the ALJ concluded that Ms. Burton was not credible and they were not supported by the documentary evidence. [Tr. 20]. For example, the ALJ noted that Ms. Burton was able to prepare meals, wash the dishes, perform household chores, visit others, eat out, and grocery shop; all activities that indicate "she is able to get about in a manner which is not significantly restricted." [*Id.*]. Ms. Burton is basically asking for a review of the ALJ's credibility decision. However, this court will note that it is not within its purview to revisit issues of credibility. *Walters*, 127 F.3d at 528.

Finally, and in the alternative, Ms. Burton argues for a remand pursuant to the sixth sentence of 42 U.S.C. § 405 (g) for consideration of new evidence. This court can remand this case to the Commissioner upon a showing by Ms. Burton that this new evidence is material to her case and that there was good cause for her failure to include this evidence earlier. 42 U.S.C. § 405 (g). Evidence is new only when it was not in existence *and* not available prior to an ALJ's decision. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Evidence is material if there is a reasonable probability the ALJ would have reached a different decision had the additional evidence been presented. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

The evidence in question includes records from Ms. Burton's September 30,

5

2003, through October 16, 2003, hospital stay for right leg blood clotting. [Tr. 341-64]. This evidence is obviously considered new because it developed after the ALJ issued his September 19, 2003, decision in the case. [Tr. 23]. This evidence is not material, however, because "such evidence does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec. of Health & Human Srvcs.*, 865 F.2d 709, 712 (6th Cir. 1988). She alleges she became disabled more than a year prior to this hospitalization. [Tr. 16]. If Ms. Burton wishes for an ALJ to evaluate this new evidence, she needs to reapply for benefits.

After careful consideration of the entire record of proceedings related to this case, Ms. Burton's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

    s/Thomas Gray Hull
THOMAS GRAY HULL
  SENIOR U. S. DISTRICT JUDGE